IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ALPHONSO R. HUGHES,

          Plaintiff,

v.                                               Case 2:14-cv-02910-SHM-cgc

RIVIANA FOODS, INC.
and TEAMSTERS LOCAL 984,

          Defendants.

## REPORT AND RECOMMENDATION ON
## RIVIANA FOODS, INC.'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Riviana Foods, Inc.'s ("Riviana") Motion for Summary Judgment. (Docket Entry "D.E." #56). The instant motion was referred to the United States Magistrate Judge for Report and Recommendation.[1] For the reasons set forth herein, it is recommended that Riviana's Motion for Summary Judgment be GRANTED.

**I. Introduction**

On November 24, 2014, Plaintiff filed a *pro se* Complaint against Riviana and Teamsters Local 984 ("Union"). (D.E. #1). Plaintiff asserted claims against Riviana under Title VII of the

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order 13-05 pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

1

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Equal Pay Act of 1963, 29 U.S.C. § 206 ("EPA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the National Labor Relations Act, 29 U.S.C. § 158(a)(4) ("NLRA"), and asserted that he was constructively discharged. (*Id.*) Riviana filed a Partial Motion to Dismiss Plaintiff's ADEA, ADA, and NLRA claims on July 15, 2015, which this Court granted on November 3, 2015. (D.E. #54). On November 20, 2015, Riviana filed the instant Motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Riviana asserts that Plaintiff should be judicially estopped from pursuing the claims contained in the Complaint because they were not properly disclosed to the Bankruptcy Court as required during the pendency of his bankruptcy case. Additionally, Riviana contends that no genuine dispute of material fact exists as to Plaintiff's Title VII, EPA, and constructive discharge claims.

On December 18, 2015, Plaintiff filed his Response to Riviana's Motion (D.E. #57); however, Plaintiff's Response failed to follow Local Rule 56.1's requirements, including that he "respond to each fact set forth by the movant" by either "agreeing that the fact is undisputed," "agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only," or, "demonstrating that the fact is disputed" with a "specific citation to the record." L.R. 56.1(b). Further, the "response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant," which Plaintiff failed to do. Pursuant to Local Rule 56.1(d), "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." L.R. 56.1(d). Accordingly, as Plaintiff's

Response does not comply with Local Rule 56.1, it is recommended that the facts asserted by Riviana are not disputed.

## II. Proposed Findings of Fact

Plaintiff was hired by Riviana Foods in March 2010 for a labor position at the Prospect building in Memphis, Tennessee. (Plaintiff's Deposition ("Pl.'s Dep.") at 38-39). Approximately six months later, Plaintiff was transferred to the Lauderdale facility. (*Id.* at 39-40). Following his transfer, Plaintiff joined the Union. (*Id.* at 42). Plaintiff understood that there was a Collective Bargaining Agreement between Riviana and the Union that set forth the terms and conditions of his employment. (*Id.* at 39-40).

Plaintiff began at the Lauderdale facility as a machine operator in the poly department but continued to do "laborer work" for three to four months. (*Id.* at 39-40). He then "started transitioning in to learn how to run the machines and become a machine operator." (*Id.* at 40). The "normal progression" included learning the machines and processes and then taking a test to demonstrate proficiency to advance to higher levels of machine operation. (*Id.* at 46).

Riviana employs four levels of machine operators---Levels Two through Five. (Declaration of Mark Nunley ("Nunley Decl.") ¶ 3). Although not required by the Collective Bargaining Agreement, Riviana generally provides the training necessary for advancement opportunities based on seniority. (*Id.* ¶ 9; Pl.'s Dep. at 46).

As Plaintiff believed that the possibilities for advancement were better in other departments, he requested to transfer to the instant packaging department, which was granted. (Pl.'s Dep. at 48). In approximately June 2011, Riviana announced a newly created Ready-to-Serve department

("RTS"). (Nunley Decl. ¶ 4). The RTS department offered a Level 5 operator position that was not available in the poly or instant packaging departments. (Pl.'s Dep. at 53-54).

Riviana offered the machine operators in the instant packaging department, including Plaintiff, the opportunity to bid to transfer to the RTS department. (Nunley Decl. ¶ 5). Plaintiff voluntarily bid for transfer to the RTS department and was awarded a position. (Nunley Decl. ¶ 6). However, as the RTS department was not fully operational at the time the bid took place, the employees were not transferred immediately. (Nunley Decl. ¶ 7).

In February 2012, Plaintiff transferred from the instant packaging department to the RTS department, along with approximately fifteen other machine operators who had successfully bid on a position in the RTS department. (Nunley Decl. ¶ 8; Pl.'s Dep. at 49, 60). Mark Nunley ("Nunley") served as the Lead Supervisor in the RTS Department but had no supervisory role with the instant packaging department. (Nunley Decl. ¶ 2).

Plaintiff was promoted to a Level Three machine operator position in February 2012 and later promoted to a Level Four machine operator position in August 2012. (Pl.'s Dep. at 50, 54). Plaintiff remained in the RTS department for the remainder of his employment with Riviana. (Pl.'s Dep. at 54). No women in the RTS department with less seniority were promoted more quickly than Plaintiff. (Pl.'s Dep. at 81).

In March 2011, two females---Shatika Boone ("Boone") and Deanna Jennings ("Jennings")---were hired by Riviana and began working in the instant packaging department as Level Two machine operators. (Declaration of Wendy McManis ("McManis Decl." ¶ 5). In September 2011, Boone and Jennings were advanced to Level Three machine operators in the instant packaging department,. (*Id*. ¶ 6). In March 2012, Boone and Jennings were advanced to Level Four machine operators in

4

the instant packaging department. (*Id.* ¶ 7). Boone, Jennings and Plaintiff earned the same amount as Level Four machine operators as of the time they all were at that level in August 2012. (Pl.'s Dep. at 74). Boone and Jennings did not bid for a position in the RTS department (McManis Decl. ¶ 8), and the majority of the machine operators in the RTS department had been working in the instant packaging department prior to their transfers. (Pl.'s Dep. at 60). The machines utilized in the RTS department and the instant packaging department are not the same and require different training. (Nunley Decl. ¶ 9).

From June 2011 until February 2012, when machine operators began working in the RTS department, the machine operators who did not bid for transfer to the RTS department were trained and given opportunities for advancement over those who had bid for a transfer to the RTS department, notwithstanding seniority. (Nunley Decl. ¶ 11). Riviana made the business decision to train and provide advancement opportunities to those employees who were not transferring out of the instant packaging department, as it did not want to expend time and resources training those employees who would be transferring out on machines that they would not be using in the future. (Nunley Decl. ¶ 12).

In August 2012, when Plaintiff was promoted to Level Four machine operator, he learned that Boone and Jennings had been promoted to this position before him. (Pl.'s Dep. at 58). Plaintiff filed a grievance with the Union regarding the earlier promotion of Boone and Jennings. (Pl.'s Dep. at 59-60). In response to the grievance, Jerry McCormick ("McCormick"), the Supervisor of the instant packaging department, stated that Plaintiff "was awarded an opportunity to transfer from Instant Packaging to RTS." (Pl.'s Dep., Exh. 1). Thus, "[w]hen he accepted the RTS position[,] it did not make business sense to train him further in Instant Packaging." (Pl.'s Dep., Exh. 1). McCormick

5

also explained that Boone and Jennings were promoted outside the normal seniority process because "he was trying to get other people prepared because he knew that he was losing other employees to go to another department." (Pl.'s Dep. at 84-86). No other women with less seniority than Plaintiff were advanced more quickly than him, and Plaintiff is not aware of any other employees that remained in the instant packaging department that had more seniority than Boone and Jennings who were not allowed to advance. (Pl.'s Dep. at 81-82). Plaintiff's grievance was ultimately denied. (Pl.'s Dep. at 85-86).

Plaintiff received a First Written Warning on September 7, 2012 for Defective Work after he failed to verify that a product was coded correctly at the start of the shift. (McManis Decl. ¶ 9). On September 21, October 25, November 27, and November 28, Plaintiff incurred four absences. (McManis Decl. ¶ 10). Pursuant to Riviana's attendance policy, Plaintiff would be subject to immediate termination if he incurred another absence within a six-month period. (McManis Decl. ¶ 11). On November 29, 2012, Plaintiff was advised by Mike Carter ("Carter"), an RTS Supervisor, and Nunley that he would be terminated in accordance with the policy if he incurred another absence. (Nunley Decl. ¶ 15). Nunley, who was aware that Plaintiff was in the process of seeking intermittent Family and Medical Leave Act ("FMLA") leave to cover his absences, advised Plaintiff that if his FMLA leave was approved, his absences would be retroactively eliminated. (Nunley Decl. ¶ 16). Ultimately, Plaintiff's intermittent FMLA leave was approved and his absences were removed from his record. (Nunley Decl. ¶ 17; McManis Decl. ¶ 12; Pl.'s Dep. at 117-118 & Exh. 6).

Plaintiff was also counseled about defective work in March 2013 and advised that any further problems would result in progressive discipline. (Nunley Decl. ¶ 17; Pl.'s Dep. at 139-140). Plaintiff did not receive ant further progressive discipline before he resigned from his employment

with Riviana on April 15, 2013. (McMannis Decl. ¶ 18; Pl.'s Decl. at 108). Plaintiff asserts that he resigned due to stress at work, trouble sleeping, a car accident, pain in his hands, and continued harassment by management in the form of constant write-ups. (Pl.'s Dep at 108, 114).

Tony Roy ("Roy"), who was a Caucasian machine operator in the RTS department at Riviana, received progressive discipline throughout 2012 and 2013 for absenteeism and/or tardiness pursuant to the attendance policy. (McMannis Decl. ¶ 19).

On September 11, 2012, Plaintiff filed Charge of Discrimination Number 490-2012-02611 with the Equal Employment Opportunity Commission ("EEOC") against Riviana alleging discrimination on the basis of sex and equal pay and alleging retaliation. (Pl.'s Compl., Exh. 2). On December 26, 2012, Plaintiff filed Charge of Discrimination Number 490-2013-00615 against Riviana alleging discrimination on the basis of race and disability and alleging retaliation. (Pl.'s Compl. Exh 3). On April 19, 2013, Plaintiff filed an amended Charge of Discrimination as to the December 2012 claims. (Pl.'s Compl. Exh. 4).

Plaintiff filed for Chapter 7 Bankruptcy on November 28, 2012. (Pl.'s Dep. at 143 & Exh. 4; Kathryn Parham Affidavit ("Parham Aff.") ¶ 4). Plaintiff was assisted by counsel when filing for bankruptcy. (Pl.'s Dep. at 143). Plaintiff did not list his claims against Riviana as an asset in his bankruptcy, even though he had an active EEOC Charge pending at the time of the bankruptcy filing. (PL.'s Dep. at 142). Plaintiff submitted his Schedules and a Statement of Financial Affairs on November 28, 2012 and did not identify his claims against Riviana in the section entitled "[o]ther contingent claims of every nature." (Parham Aff. ¶ 5 & Exh. 1). Plaintiff did disclose to the bankruptcy court a dismissed state court action filed against him by Braybourne Homeowners Association in the Statement of Financial Affairs. (Parham Aff. ¶ 6 & Exh. 1). The bankruptcy

court discharged Plaintiff in an Order dated May 22, 2013. (Parham Aff. ¶ 7 & Exh. 2). The bankruptcy court closed Plaintiff's bankruptcy in an Order dated June 27, 2013. (Parham Aff. ¶ 8 & Exh. 3).

**III. Proposed Conclusions of Law**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence

to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A. Judicial Estoppel

As a threshold matter, Riviana asserts that Plaintiff is judicially estopped from raising his claims against it because he failed to disclose the existence of his claims during his bankruptcy proceeding. The doctrine of judicial estoppel prevents "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010). The doctrine "is utilized to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id*. (citations omitted). "Numerous courts, including [this Court and the United States Court of Appeals for the Sixth Circuit], have held that omission or nondisclosure of a cause of action as an asset in a bankruptcy schedule provides an appropriate basis for imposition of judicial estoppel." *Kevin R. Dickerson v. Fed. Express Corp.*, No. 2:08-cv-02868-JPM-cgc, 2010 WL 8747316 (W.D. Tenn. Mar. 10, 2010) (citing *Mgmt. Investors v. United Mine Workers of Am.*, 610 F.2d 384, 391-93 (6th Cir. 1989)).

9

The standard for judicial estoppel, as applicable to the facts of this case, is as follows: (1) whether Plaintiff has asserted a position in this Court that is contrary to one asserted under oath in the bankruptcy proceeding; (2) whether the Bankruptcy Court adopted the contrary position either as a preliminary matter or as part of a final disposition; and, (3) whether the omission to the Bankruptcy Court resulted from mistake or inadvertence. *White*, 617 F.3d at 478.

As to the first prong, Plaintiff filed for Chapter 7 bankruptcy, with the assistance of counsel, on November 28, 2012. At that time, Plaintiff had already filed an EEOC Charge of Discrimination that had been pending against Riviana since September 11, 2012, but Plaintiff did not include that EEOC Charge in his list of assets, including in the Statement of Financial Affairs when asked to list "[o]ther contingent claims of every nature." However, Plaintiff did include a dismissed state court action filed against him. A failure to disclose violates a debtor's duty to disclose all asserts to the Bankruptcy Court, *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (citing 11 U.S.C. § 521(1)), as it is well-established that a legal cause of action is an asset that must be scheduled in a bankruptcy proceeding," *White*, 617 F.3d at 479 n.5; *Lewis v. Weyenhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005); *Eubanks v. CBSK Fin. Group*, 385 F.3d 894, 897 (6th Cir. 2004). The failure to disclose also constitutes as contradictory position under oath for purposes of judicial estoppel. *Walter Payne v. Cent. Def. Servs.*, No. 02:11-cv-02664-JPM-tmp, 2013 WL 3974575, at \*5-\*6 (W.D. Tenn. June 2013). In addition, Plaintiff filed a subsequent EEOC Charge of Discrimination on December 26, 2012 and an Amended EEOC Charge of Discrimination on April 19, 2013 without amending his bankruptcy schedules. Accordingly, Plaintiff has asserted a position in this Court---namely, that he has various causes of action against Riviana—that is contrary to the position he took in Bankruptcy Court that he did not.

As to the second prong, it is undisputed that the Bankruptcy Court relied upon Plaintiff's disclosures when it granted a discharge of his debts and closed his bankruptcy case. *See In re Johnson*, 345 B.R. 816, 822 (Bankr. W.D. Mich. 2006) (citing *Reynolds v. C.I.R.*, 861 F.2d 469 (6th Cir. 1988)).

As to the third prong, to determine if Plaintiff's omission to the bankruptcy court was based upon mistake or inadvertence, the Court should consider whether Plaintiff lacked knowledge of the factual basis of the undisclosed claims, had a motive for concealment, and whether the evidence indicates an absence of bad faith. Upon review, the record is undisputed that Plaintiff had knowledge as to the factual basis of the undisclosed claims as he had already filed an EEOC Charge of Discrimination and continued to file another EEOC Charge and Amended Charge during the pendency of his bankruptcy case. Any bankruptcy claimant additionally has a motive to conceal causes of action from the bankruptcy court because, if the claim were to be part of the bankruptcy estate, any proceeds from the cause of action could go towards paying creditors rather than compensating the plaintiff. *See In re Johnson*, 345 B.R. at 823.

The final inquiry is whether there is an absence of bad faith. Other courts have reasoned that "the burden of establishing the absence of bad faith is on the plaintiff when the defendant has shown that the plaintiff possessed knowledge of the factual basis of the claims and had motive to conceal them from the bankruptcy court." *Julius Walker v. Moldex Metric, Inc.*, No. 2:10-cv-164, 2011 WL 3044529, at *4 (E.D. Tenn. July 25, 2011) (citations omitted). There is no evidence in the record that demonstrates that Plaintiff did not have bad faith because he was represented by counsel, he included a dismissed state court action in his bankruptcy filings, but he failed to include these claims

11

against Riviana. Accordingly, it is recommended that Plaintiff should be judicially estopped from raising the instant claims against Riviana.[2]

### B. Sex Discrimination under Title VII

First, Plaintiff raises a claim of reverse sex discrimination on the basis of sex. To establish a *prima facie* case of reverse sex discrimination, Plaintiff must establish that Riviana is the unusual employer who discriminates against men by showing that he was qualified for his position, that Riviana took an adverse action against him, and he was treated differently from similarly situated women. *Simpson v. Vanderbilt Univ.*, 359 Fed. Appx. 562, 568-69 (6th Cir. 2009); *Arendale v. City of Memphis*, 519 F.3d 587, 603-04 (6th Cir. 2008). To be a proper comparator, Plaintiff must demonstrate that the individual "dealt with the same supervisor, [was] subject to the same standards and [] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish [his] conduct or [Riviana's] treatment of [him] for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

If plaintiff establishes the *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain

---

[2]   Should the District Court determine that the doctrine of judicial estoppel does not dispose of any or all of Plaintiff's claims against Riviana, this Report and Recommendation continues to consider whether a genuine dispute of material fact exists on each remaining claim.

the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Upon review, Plaintiff's supervisor while in the RTS department was not the same as Boone and Jenning's supervisor in the instant packaging department. However, it appears that Plaintiff, Boone, and Jennings all had the same supervisor in the instant packaging department from March 2011 when Boone and Jennings were hired until February 2012 when Plaintiff was transferred to the RTS department. It was during this time in September 2011 that Boone and Jennings were promoted to Level Three machine operators, although it was not during this time when Boone and Jennings were promoted to Level Four machine operators. Thus, Plaintiff could only be considered similarly situated to Boone and Jennings with respect to who served as their supervisor with respect to the September 2011 promotions.

Even so, after the June 2011 preparations to create the RTS department were in progress and while all three were in the instant packaging department, Plaintiff elected to bid to transfer to RTS. Plaintiff was successful in his bid. Boone and Jennings elected not to bid for positions in the RTS department. Thus, they cannot be said to be similarly situated with respect to their decisions on whether or not to bid for a transfer to the RTS department.

Following their differing choices with respect to the department bidding, and as the machines were not the same in the instant packaging department and the RTS department, the instant packaging department had to prepare for the transfer of some of its employees, including Plaintiff, to the RTS department. The instant packaging department made the decision to train certain

employees, including Boone and Jennings, on the instant packaging machines before the transferring employees left the department. The instant packaging department also made the decision not to utilize resources training the transferring employees, such as Plaintiff, on the instant packaging machines because they would soon be working in the RTS department.

Ultimately, there is no genuine issue of material fact that Plaintiff on one hand and Boone and Jennings on the other were subject to the same standards or were engaged in the same conduct. It is undisputed that Plaintiff was merely waiting to be transferred voluntarily to the RTS department and Boone and Jennings were preparing to continue in the instant packaging department. There is also no genuine dispute of material fact as to whether these circumstances constitute differentiating and mitigating circumstances, as they clearly explain Riviana's decisions as to the training and advancement of Boone and Jennings and the delay in training and advancing Plaintiff.

Additionally, while it is undisputed that Boone and Jennings were both female and were advanced before him outside of the seniority system to prepare for the employee loss in the instant packaging department, there is no evidence in the record that demonstrates that Riviana only advanced women rather than men in this effort to prepare the instant packaging department for a smooth transition; instead, Plaintiff admitted that he did not know either of any employees of either gender who remained in the instant packaging department that had more seniority than Boone and Jennings and were not allowed to advance in this preparation effort or of women in the RTS department with less seniority than Plaintiff who were advanced more quickly than him.

Furthermore, even if Plaintiff had been able to establish his *prima facie* case of reverse sex discrimination, the burden would shift to Riviana to demonstrate that Boone and Jennings were advanced more quickly for legitimate, non-discriminatory reasons unrelated to sex. It is

14

recommended that there is no genuine dispute of material fact that the business decisions set forth above satisfy this requirement. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6tha Cir. 2004) (reasoning that the duty of the court is "to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments").

Finally, as Riviana has offered a legitimate, non-discriminatory reason for its decision to advance Boone and Jennings more quickly than Plaintiff, the burden shifts back to Plaintiff to establish that the reasons were in fact pretextual. Plaintiff has failed to provide any evidence that Riviana's stated reason for advancing Boone and Jennings was not the actual motivating concern. Accordingly, it is recommended that there is no genuine issue of material fact as to Plaintiff's Title VII claim of discrimination on the basis of sex.

### C. EPA Claim

Next, Plaintiff asserts that Riviana violated the EPA by advancing Boone and Jennings before he was advanced. The EPA prohibits employers from paying an employee at a rate less than the rate paid to an employee of the opposite sex for equal work. *See* 29 U.S.C. § 206(d)(1). To establish a *prima facie* case under the EPA, a plaintiff must show that the defendant "pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Buntin v. Breathitt Cty. Bd. Of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). However, the only evidence in the record regarding pay is that Plaintiff received the same compensation as Boone and Jennings when they all served as Level 4 machine operators. Accordingly, it is recommended that there is no genuine issue of material fact as to Plaintiff's EPA claim.

### D. Race Discrimination under Title VII

Next, Plaintiff asserts a claim of discrimination on the basis of race in violation of Title VII. Specifically, Plaintiff alleges that managers in the RTS department treated a Caucasian employee, Roy, differently than him by allowing him to take days off without write-ups. Plaintiff contends that, on the contrary, if he missed work, he received write-ups and his job was "threatened."

To establish a *prima facie* case of discrimination on the basis of race in violation of Title VII, a plaintiff must demonstrate as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). If Plaintiff successfully establishes a *prima facie* case, the burden shifts to the remaining two prongs of the *McDonnell-Douglas* test, as set forth above.

With respect to whether Plaintiff suffered an adverse employment action, the United States Court of Appeals for the Sixth Circuit has held that a "written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action." *Creggett v. Jefferson Cty. Bd. Of Educ.*, 491 Fed. Appx. 561, 566 (6th Cir. Aug. 1, 2012). In the instant case, it is undisputed that, although Plaintiff was reminded of the Attendance Policy following his fourth absence in November 2012, he did not receive any progressive discipline for absenteeism and his absences were removed from his record after his FMLA leave was approved. Additionally, following absences in February and March 2013, Plaintiff provided documentation that they constituted FMLA leave and the absences were again removed from his record.

With respect to whether a similarly situated, non-protected employee was treated differently than Plaintiff, the record is undisputed that Roy received progressive discipline throughout 2012 and 2013 for absenteeism and/or tardiness pursuant to the attendance policy. Accordingly, it is recommended that there is no genuine dispute of material fact as to Plaintiff's Title VII claim of discrimination on the basis of race.

### E. Constructive Discharge

Finally, Plaintiff asserts that he did not voluntarily resign from Riviana on April 15, 2013 but instead was constructively discharged. To demonstrate constructive discharge, a plaintiff must show that the defendant deliberately created intolerable work conditions, as perceived by a reasonable person, that the employer did so with the intention of forcing the employee to quit, and that the employee actually quit. *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012). A constructive discharge requires that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Smith v. Henderson*, 376 F.3d 529 (6th Cir. 2004) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)) (internal quotations omitted). Whether a reasonable person would have felt compelled to resign depends on he facts of each case, but a court can consider various factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; or, (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation. *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001).

As to Plaintiff's write-ups for absences, he was merely advised of Riviana's Attendance Policy and required to provide documentation that they constituted FMLA leave, at which time the

absences were removed from his record. It is undisputed that Plaintiff received no progressive discipline following the documentation of his FMLA leave. Plaintiff also received a First Written Warning for defective work, but this also did not result in any progressive discipline. Instead, it is undisputed that, during his employment with Riviana, he successfully bid to transfer from the poly department to the instant packaging department and then the RTS department, with each transfer sought because he believed the advancement potential would be the greatest. In the RTS department, he continued to be advanced to a Level Three machine operator in February 2012 and to a Level Four machine operator in August 2012. Accordingly, it is recommended that there is no genuine issue of material fact as to whether Plaintiff was constructively discharged.

## IV. CONCLUSION

For the reasons set forth herein, it is recommended that Riviana's Motion for Summary Judgment (D.E. #56) be GRANTED.

**SIGNED** this 4th day of March, 2016.

        s/ Charmiane G. Claxton
        CHARMIANE G. CLAXTON
        UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**